**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN**

**TOMMY SMITH, JR.,**

          Petitioner,

                                                  **Case No. 06-C-1271**

    **v.**

**GREG GRAMS,**
Warden, Columbia Correctional Institution,

          Respondent.

## DECISION AND ORDER

On December 12, 2006, the petitioner, Tommy Smith, Jr. ("Smith"), who is currently incarcerated at the Columbia Correctional Institution, filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254, and submitted a brief and his own affidavit in support of that petition. As directed by this Court's December 28, 2006, Decision and Order, Smith filed his petition on an Eastern District of Wisconsin form petition. Smith challenges his January 16, 2002, state conviction for one count of child enticement in violation of Wis. Stat. § 948.07(3) and one count of second-degree sexual assault in violation of Wis. Stat. § 940.225(2)(a). Pursuant to Rule 4 of the Rules Governing Section 2254 Cases in the United States District Courts, the Court conducted a review of Smith's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.

The Court determined that the six grounds for relief raised by Smith presented arguable claims of constitutional violations and that the Court was satisfied that Smith had exhausted his state remedies. The Court directed the Respondent to answer the petition. The

Respondent answered and argued that Smith's claims are without merit because Smith cannot prove that the Wisconsin courts resolved his claims in a manner that is contrary to, or involves an unreasonable application of, clearly established federal law as determined by the United States Supreme Court. The Respondent further asserted that the state court's determination of facts was not unreasonable in light of the evidence. The parties fully briefed the issues raised by Smith's petition and the petition is ready for resolution.

**FACTUAL AND PROCEDURAL BACKGROUND**

The facts of this case are set forth in the Wisconsin Court of Appeals' decision affirming the petitioner's conviction and sentence.[1]

> According to the trial testimony, Smith, a driver for a transportation service, picked up Sarah G., who was seventeen years old, at her home to drive her to an appointment at Children's Hospital in Wauwatosa. Instead of taking the usual route to the hospital, Smith drove a circuitous one through various side streets, alleys, and parkways until coming to the Menomonee River Parkway where he parked in a residential area across from some trees. He then took Sarah's hand, telling her he had to show her something, and led her from the front passenger seat down the center aisle of the van to a rear seat where he exposed himself and sexually assaulted her. Smith then drove Sarah to her scheduled appointment, signed her in at the doctor's office, and left the building.
>
> Sarah, upon entering the doctor's office, reported that she had been assaulted. She was taken to Sinai Samaritan Women's Assessment Center, where evidence of the crime was preserved. Wauwatosa Police Officer Paula Roberson testified that Sarah showed her the route Smith had driven and the location where he parked the van. Noting the many streets and alleyways along

---

[1]"In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

> the way, Officer Roberson indicated that Smith had taken an unusually complicated route. Evidence also established that shortly after dropping Sarah off at the hospital, Smith returned to the transport office and changed vans. Smith failed to report to work the following day and, two days later, was arrested at his mother's residence.

(Answer to Petition for Writ of Habeas Corpus ("Answer"), Ex. E at 2-3.) Smith was charged with count one: child enticement (exposing sex organ), in violation of Wis. Stat. §§ 948.10 and 948.07(3), and count two: second degree sexual assault (use or threat of force or violence) in violation of Wis. Stat. § 940.225(2)(a). (Answer, Ex. O at App. 108.) The case was tried to a jury. At the trial, Smith testified. He admitted that he had had sexual intercourse with the victim while parked along the parkway, but maintained that the sex was consensual. (Answer, Ex. E at 3.)

On January 16, 2002, the jury returned a guilty verdict as to both counts. On February 28, 2002, Smith was sentenced for count one to 25 years in the Wisconsin State Prison System, with 15 years as the term of initial confinement, and 10 years as the term of extended supervision. On count two, Smith was sentenced to 25 years, with 15 years initial confinement, and 10 years of extended supervision, to run consecutively to the sentence of count one. Judgment of conviction was entered on March 1, 2002. (Answer, Ex. A.)

Smith appealed his conviction but the Wisconsin Court of Appeals affirmed on August 26, 2003. (Answer, Ex. E.) On January 23, 2004, the Wisconsin Supreme Court denied Smith's petition for review. (Answer, Ex. H.) Smith filed a petition for writ of habeas corpus to the Wisconsin Court of Appeals. On April 12, 2004, the Wisconsin Court of Appeals denied Smith's petition *ex parte* and directed Smith to file his petition in the

circuit court. The circuit court treated Smith's petition as both a petition for habeas corpus and a motion for postconviction relief under Wis. Stat. § 974.06. The circuit court denied Smith's petition on June 16, 2004. (Answer, Ex. I at App. 116.) On June 23, 2005, the Wisconsin Court of Appeals affirmed the circuit court's denial of Smith's petition. (Answer, Ex. L.) On September 9, 2005, the Wisconsin Supreme Court denied Smith's petition for review. (Answer, Ex. N.) Smith filed a second motion for postconviction relief predicated on claims of newly discovered evidence which the circuit court denied on September 27, 2005. (Answer, Ex. P at R-Ap. 103.) On May 16, 2006, the Wisconsin Court of Appeals summarily affirmed the circuit court's decision. (Answer, Ex. R.)

Smith's Petition for Writ of Habeas Corpus raises six constitutional challenges to his conviction. Smith contends that his conviction was unlawfully obtained and should be overturned because: (1) it was based on a blood sample obtained by an unconstitutional search and seizure; (2) the prosecution failed to disclose exculpatory evidence which was favorable to Smith; (3) there was prosecutorial misconduct based on the knowing presentation of false testimony; (4) Smith received ineffective assistance from trial counsel; (5) the trial court abused its discretion by not allowing a physical demonstration, by denying Smith's request to submit documentary evidence and by failing to call a mistrial after defense counsel made a highly prejudicial remark to the jury during closing argument; and, (6) Smith received ineffective assistance from appellate counsel.

**APPLICABLE LAW**

A federal court may grant habeas relief only if the petitioner demonstrates that he is in custody "in violation of the Constitution or laws or treaties of the United States." 28

-4-

U.S.C. § 2254(a). The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") greatly restricts federal habeas review of state court criminal convictions. The United States Supreme Court summarized the narrow scope of federal habeas corpus review of state court judgments as follows:

> AEDPA provides that, when a habeas petitioner's claim has been adjudicated on the merits in state-court proceedings, a federal court may not grant relief unless the state court's adjudication of the claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). A state-court decision is contrary to this Court's clearly established precedents if it applies a rule that contradicts the governing law set forth in our cases, or if it confronts a set of facts that is materially indistinguishable from a decision of this Court but reaches a different result. *Williams v. Taylor, supra*, at 405, 120 S.Ct. 1495; *Early v. Packer*, 537 U.S. 3, 8, 123 S.Ct. 362, 154 L.Ed.2d 263 (2002) (*per curiam*). A state-court decision involves an unreasonable application of this Court's clearly established precedents if the state court applies this Court's precedents to the facts in an objectively unreasonable manner. *Williams v. Taylor, supra*, at 405, 120 S.Ct. 1495; *Woodford v. Visciotti*, 537 U.S. 19, 24-25, 123 S.Ct. 357, 154 L.Ed.2d 279 (2002) (*per curiam*).

*Brown v. Payton*, 544 U.S. 133, 141 (2005).

Thus, "contrary to" and "unreasonable application" have independent meaning. *See Williams v. Taylor*, 529 U.S. 404-05 (2000). The question is whether the state court's application of clearly established federal law is objectively unreasonable; an unreasonable application is different from an incorrect one. *Bell v. Cone*, 535 U.S. 685, 694 (2002).

> An incorrect application of clearly established federal law is not necessarily an unreasonable one. *Hough v. Anderson*, 272 F.3d 878, 890 (7th Cir. 2001). As such, a federal court cannot substitute its independent judgment as to the correct outcome;

-5-

> rather, it must determine that a state court decision was both incorrect *and* unreasonable before it can issue a writ of habeas corpus. *Washington v. Smith*, 219 F.3d 620, 628 (7th Cir. 2000).

*Davis v. Litscher*, 290 F.3d 943, 946 (7th Cir. 2002).

A state court decision "'minimally consistent with the facts and circumstances of the case'" is not unreasonable. *Conner v. McBride*, 375 F.3d 643, 649 (7th Cir. 2004) (citation omitted). A court unreasonably applies federal law if it makes a determination "'lying well outside the boundaries of permissible differences of opinion.'" *Id.* (citation omitted). Finally, a state court's factual determinations are presumed correct and are not "'unreasonable,' unless a petitioner can show otherwise by clear and convincing evidence." *Id.* (and cases cited therein); 28 U.S.C. § 2254(e)(1).

Further, the Court may not grant federal habeas relief unless it determines there was "clearly established Federal law" as determined by the Supreme Court at the time of the state court ruling in question. *Lockyer v. Andrade*, 538 U.S. 63, 71-2 (2003). A rule is "clearly established" when it is compelled by existing Supreme Court precedent. This Court may not rely on precedent of circuit courts of appeals. There must be Supreme Court precedent to support the petitioner's claim and that Supreme Court precedent must have clearly established the relevant legal principle as of the time of the petitioner's direct appeal. *Schaff v. Snyder*, 190 F.3d 513, 522 (7th Cir. 1999).

## DISCUSSION

Smith raises several challenges to his conviction. Smith's first challenge is that blood evidence was obtained from him pursuant to an unconstitutional search and seizure. (Petition at 6.) The petitioner contends that he refused to voluntarily provide a blood sample

-6-

and requested an attorney. A search warrant was obtained and the petitioner refused to comply with the search warrant and again requested an attorney. The petitioner states he was placed in segregation without lunch or dinner as punishment for his refusal to comply with the warrant. The first warrant was withdrawn and a second warrant was issued. The petitioner claims he complied with the second warrant and provided a blood sample "under duress of being in segregation." (Petition at 6-7.)

The state obtained the blood sample pursuant to a search warrant and Smith does not challenge the probable cause determination supporting that warrant. He argues that he was unconstitutionally deprived of counsel at the time his blood was drawn. The court of appeals dismissed this claim noting that the state drew the blood before charging Smith, and therefore, before his right to counsel accrued. (Answer, Ex. L at 3 citing *State v. Neitzel*, 95 Wis. 2d 191, 198, 289 N.W. 2d 828 (1980) (no right to counsel in conjunction with pre-charging gathering of scientific evidence)).

Smith cannot prevail on this claim unless he can demonstrate that the Wisconsin courts acted contrary to, or unreasonably applied, clearly established principles of Supreme Court law when the Wisconsin Court of Appeals held that Smith's right to counsel had not attached when Smith's blood was drawn. Smith does not present any argument regarding any clearly established principles of Supreme Court law that were violated by the court of appeals' decision.

The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence." U.S. Const. Amend. VI. The Sixth Amendment right to counsel "does not attach until a

-7-

prosecution is commenced, that is, 'at or after the initiation of adversary judicial criminal proceedings – whether by way of formal charge, preliminary hearing, indictment, information, or arraignment.'" *McNeil v. Wisconsin*, 501 U.S. 171, 175 (1991) (citation omitted). Smith was not entitled to counsel when his blood was drawn because Smith had not yet been charged in criminal proceedings at that point in time.[2] Moreover, Smith cannot claim a right to counsel under the Fifth Amendment[3] because the Fifth Amendment does not apply to blood draws. *See Schmerber v. California*, 384 U.S. 757, 761-66 (1966). Furthermore, the language of the Eighth Amendment[4] applies only to those convicted of a crime. *See Whitley v. Albers*, 475 U.S. 312, 318 (1986) (discussing that the Cruel and Unusual Punishments Clause was designed to protect those convicted of crimes and applies only after the state has complied with the constitutional guarantees traditionally associated with criminal prosecutions). The Eighth Amendment does not apply because Smith had not yet been convicted. Therefore, Smith's claim that his blood was drawn in violation of the Constitution is without merit.

Smith's second argument is that the state withheld exculpatory evidence which consists of photographs of the victim taken the day after the assault. Smith claims the

---

[2] From this Court's review of the record, it appears that the second search warrant authorizing use of force reasonably necessary to obtain the blood of Smith was issued on June 27, 2001. (Answer, Ex. M. at App. 119.) Criminal charges were filed on July 11, 2001. (Answer, Ex. O at App. 105.)

[3] The Fifth Amendment provides that "[n]o person . . . shall be compelled in any criminal case to be a witness against himself . . .." U.S. Const. Amend. V.

[4] The Eighth Amendment provides that "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Const. Amend. VIII.

photographs of the victim show no injuries to the victim and could have been used to impeach the testimony of witnesses who testified as to the victim's injuries. (Petitioner's Brief at 3.) The constitutional violation alleged is a violation of due process for failure to turn over exculpatory and/or impeaching evidence as constitutionally required under *Brady v. Maryland*, 373 U.S. 83 (1963). A *Brady* violation can be broken down into three basic elements: (1) the evidence at issue is favorable to the accused, either being exculpatory or impeaching; (2) the evidence must have been suppressed by the government, either willfully or inadvertently; and (3) there is a reasonable probability that prejudice ensued – in other words, the evidence is material. *See Youngblood v. West Virginia*, 547 U.S. 867, 869-70 (2006).

> The Wisconsin Court of Appeals addressed Smith's claim by stating:
>
> Smith has not presented a meritorious claim that the State withheld exculpatory evidence from him. His defense to the sexual assault charge was the victim's alleged consent. He asserts now that the State withheld photographs of the victim that would have impeached testimony that she came away from their encounter with visible bruises. However, the photographs are not of record. Smith's claim that they are exculpatory rests on nothing more than his conculsory allegation. He has not satisfied his burden of proof.

(Answer, Ex. L. at 3-4.) The record on appeal from the denial of Smith's first postconviction motion did not contain the photographs and the court of appeals rejected the argument as conclusory. The circuit court, however, in ruling on Smith's second motion for postconviction relief viewed the photographs and specifically found the photos were not favorable to the defense. (Answer, Ex. P, R-Ap. 103-04.) The circuit court stated that "the court can visibly detect evidence of bruising on the photographs, and therefore, the

-9-

photographs, in connection with the testimony from the nurse [who testified that she had noticed a bruise to the right upper arm that was purple and reddened], the victim, and the victim's mother substantiates the fact that bruising had occurred, and in turn, substantiates the State's claim that the defendant used force in committing the offense." (Answer, Ex. P, R-Ap. 104-5.) These findings by the circuit court, specifically that the photographs were not favorable to the defense, are entitled to the presumption that they are correct. Smith bears the burden of overcoming that presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). Smith has failed to do so.

Smith's third argument is that the prosecutor knowingly presented false testimony. (Petition at 8.) Smith contends that on June 20, 2001, Wauwatosa Police Officer Paul Leist ("Leist") reported that Dr. Leslie Smith ("Dr. Smith") informed him that during a therapy session the victim told Dr. Smith that the petitioner "had sex with her" and that Dr. Smith admitted asking the victim if there was penetration, if she was scared and if she felt pain. On January 15, 2002, Dr. Smith testified that during a therapy session, the victim told her that the petitioner "raped her." Dr. Smith further testified that she did not ask any detailed questions because she did not want to contaminate the victim's answers and because she was trained to do so. (Petition at 8.) Smith contends this discrepancy between Dr. Smith's statement to Leist and her testimony at trial constitutes prosecutorial misconduct.

On appeal, the court of appeals held "[w]e see no significant discrepancy between describing an incident as rape and describing it as a frightening, painful sexual encounter. Even if there was a discrepancy, there is no evidence that it resulted from prosecutorial misconduct or that it constituted perjury." (Answer, Ex. L at 4.)

-10-

The government's knowing use of false testimony, or failure to correct testimony violates due process. *Giglio v. United States*, 405 U.S. 150, 153 (1972). In order to set aside a verdict and order a new trial, a defendant must establish that (1) the prosecution's case included perjured testimony; (2) the prosecution knew or should have known of the perjury; and (3) there is a reasonable likelihood that the false testimony could have affected the judgment of the jury. *Shasteen v. Saver*, 252 F.3d 929, 933 (7th Cir. 2001).

In this case, there was no use of false testimony. The therapist gave a statement to the police that the victim told her that Smith had "had sex" with her; the therapist also told police that the victim said she felt scared during the incident and felt pain as well. The therapist's statement to the police is not necessarily inconsistent with her testimony at trial that the victim told her that Smith had "raped" her. Furthermore, even if the testimony is considered inconsistent, inconsistent trial testimony is not false or perjured testimony. "'Mere inconsistencies in testimony by government witnesses do not establish the government's knowing use of false testimony.'" *United States v. Verser*, 916 F.2d 1268, 1271 (7th Cir. 1990) (citation omitted). The court of appeals' finding that there was no discrepancy in the testimony is not objectively unreasonable. Nor is it clear that Smith suffered prejudice because of Dr. Smith's alleged inconsistent statement. This Court's review of the record documents the evidence presented to support the prosecution's theory of rape and to negate the defense's theory of consensual sex.

Smith's fourth claim for relief is that his trial counsel provided ineffective assistance of counsel. Smith claims his attorney warned him that he would be "motivated" to do the best he could if Smith paid his legal fees. (Petition at 9.) Smith further claims that

-11-

his attorney failed to inform the trial court that the prosecution had not disclosed the allegedly exculpatory photographs already discussed in this Decision and Order. Smith also asserts that his trial counsel failed to call a detective as a witness who would have impeached the state witnesses with respect to the existence of the victim's injuries. Smith also contends that his attorney made a highly prejudicial comment to the jury implying that Smith was guilty. Smith again claims that his blood sample was obtained by "coercion" and Smith's attorney was ineffective for failing to move to suppress this evidence.

An ineffective assistance of counsel claim is governed by a two-part test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). *Strickland* is clearly established Federal law, as determined by the Supreme Court of the United States. *See Washington*, 219 F.3d at 627-28. Pursuant to *Strickland*, a petitioner "must show that counsel's performance was deficient . . . [and] . . . the deficient performance prejudiced the defense." 466 U.S. at 687. The first element requires a petitioner to show that his trial counsel "made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* In considering the first element, the Supreme Court has instructed courts not to engage in "the distorting effects of hindsight," and to "evaluate the conduct from counsel's perspective at the time." *Id.* at 689. In addition, courts must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.*

Under the second component, a petitioner "must show that there is reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. A reasonable probability is a probability

-12-

sufficient to undermine confidence in the outcome. *Id.* A petitioner must show "that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial who result is reliable." *Id.* at 687.

If the Court determines that the petitioner has failed to satisfy either component of the *Strickland* test, it need not address the other. *See Chichakly v. United States*, 926 F.2d 624, 630-31 (7th Cir. 1991). "Unless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable." *Strickland*, 466 U.S. at 687.

The court of appeals rejected Smith's various ineffective assistance challenges after applying the controlling principles of *Strickland v. Washington* to the facts. (Answer, Ex. L at 4.) In order to overturn his presumptively valid state court conviction in federal court, Smith must prove the Wisconsin courts resolved his ineffective assistance challenges in a manner that is contrary to, or involves an unreasonable application of, the principles of *Strickland v. Washington*. *See Bell*, 535 U.S. at 693-94. Smith must prove that the court of appeals' resolution of his *Strickland* challenge was both incorrect and unreasonable. *Id.* at 698-99.

The court of appeals determined that Smith's claims that counsel deliberately provided poor representation because of an earlier disagreement over attorney fees were conclusory. (Answer, Ex. L at 5.) The court of appeals also determined that the officer, who Smith claims should have been called at trial, would not have provided exculpatory testimony. At Smith's parole revocation hearing, the officer testified that he did not see any

-13-

visible injuries on the victim, but added that he never looked for any either. The court of appeals determined his "testimony was neutral at best." (Answer, Ex. L at 4.)

Smith's defense to the charges was consent. At closing, Smith's attorney described Smith's act toward the victim as "despicable" and possibly "criminal." Smith, however, never denied that he had sexual intercourse with the seventeen-year old victim. The court of appeals determined that counsel's remarks "were consistent with that defense, because what he described as 'despicable' and 'criminal' was Smith's decision to have consensual sex with an immature seventeen year old." (Answer, Ex. L at 4-5.)

When counsel is alleged to be ineffective for failing to pursue a motion to suppress evidence, counsel can only be considered deficient if the motion would have been successful. *Kimmelman v. Morrison*, 477 U.S. 365, 375 (1986); *United States v. Stewart*, 388 F.3d 1079, 1084 (7th Cir. 2004). Smith's blood was drawn pursuant to a proper warrant, which Smith does not dispute. Therefore, it was not deficient performance of Smith's attorney to not attempt to suppress the DNA evidence which was properly obtained. Smith's challenges also fall "squarely within the realm of strategic choice" which will not support a *Strickland* challenge. *United States v. Cieslowski*, 410 F.3d 353, 361 (7th Cir. 2005).

Smith does not allege any credible facts which overcome the presumption that his attorney provided professionally competent assistance. Smith cannot overcome the strong presumption that trial counsel made sound strategic decisions and performed in a reasonably competent manner. Smith further fails to establish how he was prejudiced by trial counsel's alleged deficient performance. Thus, Smith fails to establish that the Wisconsin

-14-

courts acted contrary to, or unreasonably applied, the principles of *Strickland v. Washington*, when Smith's claim of ineffective assistance of counsel was rejected.

Smith's fifth claim for relief is that the trial court abused its discretion. In particular, Smith contends that the trial judge denied Smith's request to perform a physical demonstration to prove it was physically impossible for him to have restrained the victim, as she alleged, without asking to see what the physical demonstration consisted of. According to the court of appeals, Smith wanted to arrange chairs and lie on them to show the jury the layout of his van where the charged incident took place. Smith's attorney objected and "the trial court properly determined that the decision whether to conduct the demonstration was a matter of trial tactics for counsel to decide." (Answer, Exh. L at 5.)

Smith also contends that the trial judge denied his request to submit documentary evidence without asking to see what the evidence contained. Smith's final contention regarding abuse of discretion is that the trial judge failed to call a mistrial after Smith's attorney made "highly prejudicial" comments to the jury during closing arguments. The court of appeals noted that the trial court properly excluded certain evidence as cumulative and discussed that the statements made during Smith's closing were consistent with the defense's theory of consensual sex. (Answer, Ex. L. at 5.)

Smith's argument contending abuse of discretion by the trial judge is meritless. Even if the trial judge erred in the admission of evidence, which he did not, the admissibility of evidence is generally a matter of state law and federal habeas relief is unavailable to remedy errors of state law. *Perry v. McCaughtry*, 308 F.3d 682, 688 (7th Cir. 2002). Smith fails to raise a credible argument demonstrating that the evidentiary rulings of the trial judge

-15-

denied him a fundamentally fair trial. *Haas v. Abrahamson*, 910 F.2d 384, 389 (7th Cir. 1990) (discussing that "state court evidentiary rulings, because they are a matter of state law, will rarely serve as a proper basis for granting a writ for habeas corpus"). Smith does not show that the errors alleged are of the character or magnitude cognizable under a writ of habeas corpus. Indeed, he has failed to even establish that there was error.

Smith's final claim for relief is that his appellate counsel did not adequately communicate with him before filing the appellate brief in his direct appeal. The court of appeals disposed of this claim as follows:

> Smith's contention that appellate counsel did not adequately consult with him provides no basis for relief. Regardless of the truth of Smith's allegation, he has demonstrated no prejudice. He has failed to demonstrate that additional consultation would have improved his chances in postconviction proceedings.

(Answer, Ex. L at 5). Smith has not demonstrated prejudice and consequently, his claim of ineffective assistance of appellate counsel is without merit. Smith again fails to establish that the Wisconsin courts acted contrary to, or unreasonably applied, the principles of *Strickland v. Washington*, when Smith's claim of ineffective assistance of appellate counsel was rejected.

In conclusion, the decision of the state court was neither contrary to nor involved an unreasonable application of clearly established federal law as determined by the Supreme Court of the United States. Further, the state court's adjudication of the petitioner's claims did not result in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented. Therefore, Smith's petition for writ of habeas corpus is denied.

-16-

# ORDER

**NOW, THEREFORE, IT IS ORDERED** that Smith's Petition for Writ of Habeas Corpus (Docket No. 1) is **DENIED**.

**IT IS FURTHER ORDERED** that this action is **DISMISSED**.

**IT IS ALSO ORDERED** that the Clerk of Court is **DIRECTED** to enter judgment accordingly.

Dated at Milwaukee, Wisconsin, this 24th day of September, 2008.

**SO ORDERED,**

*s/ Rudolph T. Randa*
**HON. RUDOLPH T. RANDA**
**Chief Judge**